Good morning, Your Honors. I'm Rick Fleming. I represent the appellant in this case, Caskey Dixon. What this case involves, essentially, is what the duties are of a transfer agent, and in particular, what those duties are when they have an attorney opinion letter in their possession. In this case, what the Court needs to keep in mind, I think, is that we have essentially a single individual, Mr. Dixon, who is submitting his shares through his trustee and basically requesting that those shares be put in a condition where they could be sold. And what he was faced with on the other side was a collection of entities here, who basically, I believe, should be viewed under the law as a single entity. What you have is the corporation, which was Ticketmaster. What you have is their transfer agent, which by law stands in their shoes. And what you also have is Wilson Cincini, which was acting as counsel on behalf of Ticketmaster, and which, in fact, had communicated with both Chasemellon and with Ticketmaster, and had provided them with an opinion letter. GINSBURG The problem, however, is that the request for transfer, for registration of transfer, exchange, however you want to say it, the request had to do with a different certificate number that was issued on a different date and a different name from the request. And to me, that's what the district judge said, and said pretty simply, that that doesn't trigger the duty end of it. Even though from the cosmic perspective you're taking, looking down on this transaction, sure, you can, it's easy then to say, hey, this is just Mr. Dixon's shares. I mean, if you look at it that way, it's easy. But when you look at it from the point of view of what was asked of Chasemellon, it wasn't the right certificate. BROWN Let me address that in two ways, Your Honor. GINSBURG Please. BROWN First of all, if I may, the certificate actually did have the same name on it and had the same number of shares. GINSBURG But it had 20, certificate 20 had certificate 26. BROWN I understand. GINSBURG And Wilson-Sonsini's letter, opinion, blanket opinion letter, as you call it, from December, attaches Exhibit A with a whole bunch of certificates which it says are okay to lift the restrictions on and to transfer free and clear. But that certificate is nowhere on there. BROWN But the shares are. GINSBURG But that's not the way you do things. BROWN Well, Your Honor, that's the way Chasemellon did it. I mean, if you look at the way Chasemellon had set up its system, their system didn't include certificate numbers. In fact, we presented evidence to the district court that showed all they had there was the name and the amount of shares. And that's what. GINSBURG There's evidence, there's evidence both from your expert and from Chase that that's not, that they did it the other way. So the district, this is a bench trial. BROWN Your Honor, I. GINSBURG I mean, I don't know how you go about checking it anyway. I mean, there's, you can't, there's different certificate. That's all the certificates, what's got the legend on it. BROWN I think that if the court would just indulge me on this. When you look at Angela Javits' testimony. GINSBURG Yeah. BROWN What she's saying is I had a binder on my desk. And I looked at that binder. And the binder, when she talked about what it showed to her, didn't have certificate numbers. All it had was the name and the amount of shares. If she had, and that's what she acted on. The problem was that over here was an opinion letter that was never looked at in this process at all. KAGAN So, but their negligence isn't at issue in this case. BROWN I understand, Your Honor. KAGAN All right. BROWN But I think what you have here is a question of whether or not the statutory requirements had been met. And there are three of those that seem to be at issue here. First was whether or not UMB was eligible to receive this security. And I submit to the court that it clearly was eligible. The next question is whether or not this request violated a restriction and also whether it was in fact rightful. And this is where you get into a very significant issue in this case. And that is, are you using an objective standard or subjective standard? If what you're faced with here is a transfer agent that has in its possession information that should at least allow it to call up the Wilson Seamy firm and say, you know, it's a little confusing, what's the story? I submit, Your Honor, that that's all they had to do. And it's not a question of negligence because the statute talks about whether something is in fact rightful, whether the transfer is in fact rightful, and whether or not the proposed transfer violates a restriction. But you don't get there unless you get past the district court's basic and fundamental finding that UMB was not eligible to have unrestricted shares registered in its name because the December opinion letter identified shares represented by a certificate with a The rest of the stuff, the rest of the findings are totally immaterial if that one's correct. Well, as to the court, the court is, the district court was in error under the statutory scheme. And that's why I've been stressing the idea of an objective analysis versus a subjective analysis. That's quite objective, though. You see, that has nothing to do with any subjective thing. That finding is a clean finding. It is not infected by reasonableness, which has to do with whether the transfer was rightful or not. And we don't get there if the district court was correct about eligibility. So apart from reasonableness or apart from the objectivity issue, why do you say that that core finding was, why should we be firmly convinced that that was wrong? You and, well, first of all, Your Honor, I submit the question of eligibility is different than the question of the restriction and whether or not it in fact is still in play. Eligibility under the statute goes to whether or not a person has the ability to take title. There are different components of the statute. One part of it is eligibility. There's another subpart which deals with whether or not there's a violation of a restriction. And with all due respect, Your Honor, I think the Court's focusing on restriction. UMB was a successor trustee. They had every right to take title. They had every right to have a transfer here. I'm sure they did. Cosmically. Cosmically. But that's not something that they said or they didn't tell Wilson Sonsini that and they didn't tell Chase Millen that. Your Honor, if you look at Exhibit 13A, and I can give you the specific ER site if may be, they provided them with the assignment document. They provided them with the assignment from the predecessor, NAPC, to UMB. That's what made UMB eligible for the transfer. They had a legally binding document which transferred title to them. Whether or not it was restricted or not, that's a secondary issue. That's the next issue that you deal with. The point is that the transfer itself, the request for a transfer from NATC to UMB was, should have been, allowed. Then you get to the next, and wasn't. It wasn't even statute by a trustee. There was no sale involved yet. And so, then you get to the question of whether or not this request to have the shares unrestricted was in fact rightful and violated a restriction. And I submit to the court that the analysis that was done here was in error. That essentially what you have is a statute which on its face says, is this transfer in fact rightful? It doesn't talk about whether or not there's some doubt that could be injected into the situation. This is an absolute liability statute. And if there is some question or some doubt created by the Wilson-Cincinni opinion letter, that's for these three entities to determine amongst themselves what to do about it after they've allowed this rightful transfer request to take place. Because in the end, it is important to take a big view of this picture. Because that's what the statute talks about. UMB was clearly eligible for this transfer. They had a formal assignment document. The next question is they could not sell the document. They could not sell the shares. Well, that's the next question, Your Honor. I submit to the court that at the very least what Chase Mellon should have done is issued a certificate to UMB that was restricted. But, no, I also think it should have been unrestricted. And I think it should have been unrestricted because of the fact that there was no basis for restriction anymore. And they had an attorney opinion letter which essentially confirmed that for these shares. And I know the Court is focusing on the A20 v. A26. Yeah. But I think that that, if nothing else, under these circumstances, it never came to the attention of anyone at Chase Mellon. And had it come to their attention, Your Honor, it would have come to the attention in the context that I've described. Angela Javid looking at her desk binder, not looking at any certificate numbers on that desk binder, but instead, as the evidence presented to the trial court showed, looking at a name and the amount of shares. There was no other shares of this company that were owned by NATC. But, you know, Wilson Sonsini's opinion letter, as I read it, itself says that you've got to refer to the certificates evidencing the shares. And you can reissue the shares upon presentation of the stock certificates set forth on Exhibit A. So even if you had had the Wilson Sonsini opinion letter right on top of the radar screen, you still couldn't have done it because you can look until the cows come home and you don't find the certificate number as to which there is a request for an unrestricted transfer. Your Honor, the Wilson Sonsini testimony, Mr. Sheridan's testimony, as well as that of the paralegal that was involved in this process, their understanding of this letter was that it released these shares from any restrictions. That was their intent and their purpose. Well, it may well be. I don't know what was in their mind, but I do know what was in their letter. Well, Your Honor, I submit that when you look at the first paragraph that sets the stage, and basically the first paragraph of that letter says that we're going to remove restrictive legends from the shares, which is defined in a way, registered in the names of those persons set forth in Exhibit A. That's how it starts. Now, I grant you that the pen at the bottom says, accordingly, we have a list attached, and in that list you've got the certificate numbers. And that would create a question mark, but I submit to you, Your Honor, that what you're looking at under the statute is not negligence. What you're looking at is an objective situation. And the objective situation is those shares had no restrictions, and there's nothing under the statute that basically it talks about, is this a rightful transfer that's being requested? There was no fraud here. There was nothing wrong about this transfer. The only issue is the restrictions. And what is the standard that you look at there? Well, there's a case out there, American Securities, I guess it is, American Securities, which is out of Colorado, which basically says this court's not going to read into the statute a requirement that somebody submit an opinion letter. But if they are going to submit an opinion, that's what it says. And that's what I submit. Here, an opinion letter did exist. So it's that much better of a situation. But the court was focusing on the objective reality as the statute does in deciding whether or not there was a basis to conclude that this transfer request was appropriate. And to make this thing administratively feasible, don't you have to tie it to certificate numbers? I mean, I don't see how you can, if you're going to, what else is it tied to, just names or what? There are two ways to do it, Your Honor, and there was testimony on this. There is a certificate-based way of doing it, or there is a name and share number-based way of doing it, which is how Chase Mellon had set it up. The certificate numbers and the truth of the matter is the way Chase Mellon set it up does comply with the conceptual understanding of shares versus certificates. I submit something to Chase Mellon. It's in Rick Fleming's name. They look for Rick Fleming's name and they also look for the number of shares that I'm submitting, 22,113. There's nobody else on there with that number of shares. It doesn't matter if it's certificate A, B, C. They've got what they need to at least get to the next stage, which is determining whether or not that restriction should apply, and they've got a proper submission. This is their process. They could have submitted, set it up by certificates, but they didn't do that. And so what I'm saying is, let's assume that Angela Javit had received, had in her binder that certificate, that opinion letter. She's looking through her binder and she's seeing NATC 22,113 shares. Here, she's looking at an opinion letter and she's looking to see if they match. They match. Yes, there is an A20, A26 difference, but it's a difference that doesn't matter for her purposes. And it doesn't matter in terms of the bigger picture, Your Honor, which is what I think the statute requires. That's the kind of analysis that is talks about whether or not the transfer is in fact right, but whether or not the restriction prevents the transfer. So... Did the Ticketmaster lose A20 and substitute A26? Where did that... That happened very early in the process. It wasn't Ticketmaster's fault. This was one of the trustees. NATC had lost A20. That had then been replaced with A26. And UMB then came in as a substitute trustee. And at that time, A26 was the certificate they had in their possession. Now, what did your client do while this process was going on? Did he make telephone calls periodically, write letters, or what? His contact was UMB. This was his trustee. He made the request, please get my certificate. He was working during an IPO. He recognized that he had an opportunity here to sell at a very good price. So he was, and the record does show, he was encouraging, he was sending emails, he was writing letters to UMB saying, what's going on? What's the status? And UMB, in turn, was trying to communicate with Chase Mellon. And at one point was basically led to believe that everything was working. And so they waited. And that communication, in and of itself, violated a CFR requirement, which was that they should have been told when they requested information about their transfer request. They should have been told that there was a problem here. But they weren't told that. They were led to believe that. What was the reasonable time to complete this process? The testimony was about 7 to 10 days, Your Honor. I mean, from receipt to conclusion, I believe it was, it could have been even less, 5 to 7, something like that, business days. It's not a complicated process. I'd like to reserve the rest of my time for but unless there's any other questions. Ms. Baca. Good morning, Your Honor. Jelena Baca and Samantha Black here today on behalf of the defendant, athlete Chase Mellon. Your Honor, I believe that you just described Judge Cooper's decision as pretty direct, and it is. Her findings of fact are sound and they are supported by the record. What we have here is a single statutory claim. And all of this information about what we could have, would have, should have done in terms of the departments coordinated is just not material. The question that is triggered by the UCC is, did you, shareholder, present to the transfer agent the materials that were necessary such that you had a duty to register a transfer? It is not incumbent upon the transfer agent. There's no authority out there that would put it there. And in fact, it's to the contrary, for a transfer agent to go hunting for opinions to lift restrictions. We have here just happenstance that the December 8th opinion existed because Wilson-Sonsini had sent it. But the Wilson-Sonsini opinion, as this Court has noted, and as the trial court correctly noted, said certificate A-20, not A-26. Now, counsel would say, and in fact just said, gee, their process didn't look at certificate numbers. Two different issues. The first issue is by statute, what was submitted. By statute, what went in was a certificate of security that had a restrictive legend. That said, they either had to be registered or you had to have an opinion letter from counsel. Period. The face of the restriction, the face of the certificate precluded transfer. So what was necessary was for UMB, and remember, we've heard, it's not Mr. Dixon alone in this world. It is UMB, the plan administrator, one of the largest plan administrators for retirement accounts, who submitted those shares. It was incumbent upon UMB that was aware of the restriction to get that opinion letter from counsel. Turning to the process, what counsel has described as the exchange process, not the transfer process. And, of course, what adds to the confusion in all of this is that we have city search shares that need to be tendered and exchanged for Ticketmaster online city search shares. What's the end effect? Well, had UMB requested a retitling of the shares that were previously held by NATC of city search shares, they still have city search shares. But the reality is, which aren't available to be sold on the open market. They just have city search shares. What Chase Mellon was required to do, and the corporate documents required, was that the materials, the shares be tendered and exchanged. The exchange process relies upon the information provided by the company. Again, here, Wilson-Sonsini. What was provided to the trial court was the information provided by a spreadsheet. And from that spreadsheet is the fact sheet that opposing counsel talks about. The spreadsheet says that when these certificates come in, including Certificate A-26 of NATC with the matching date, when those shares come in, exchange them and give them restricted shares of Ticketmaster online city search. It's that easy. So the fact that counsel might say, well, gee, they were doing it by name, not share certificate number, that's incorrect in that the spreadsheet that came originally had the certificate numbers. But in any event, none of it really matters because what they submitted did not permit them to have the restriction removed. And for that reason, there would be no duty on the transfer agent to register the transfer. Separate from that, counsel has drawn the court's attention to a decision called, I think it's American Securities v. Pantheon, which is a Colorado case. It is true that the court in that context said that the court that authored the opinion was not going to put a requirement that you have an opinion letter of counsel to have restriction removed. But in that case, what happened was the legend on the restriction didn't require a legal opinion, and the parties had argued that a legal opinion was required. And in that context, the Pantheon court said, no, I'm not going to put that in there because it just doesn't exist and it's not in the restriction. So we would say that that doesn't have a lot of bearing here where our restriction, in fact, required it. We would also, and I'd like to call attention because I don't believe we cited it and I apologize, call attention of the court to a First Circuit case, which is Kendler v. Canal National Bank. It's 489 Fed Second 482. It's a 1973 case. It is cited within other authorities that we cited, but apparently we didn't pull that one out directly, which says, under this exact same provision of the UCC, the failure to enforce it renders the transfer not rightful. And thus, there's no liability to the transfer agent. Essentially, what Judge Cooper did here was she followed established law that looks to the UCC. She did not engraft a reasonableness provision to it. And in fact, through the authorities that we cited, DeWitt, Kendler, the court will also find a variety of other things that are in violation of federal law. And they basically say, look, we're dealing with restricted securities. We have the security, the Federal Securities Act. It cannot be that there is a state law that would require a transfer agent to violate federal law. Thus, if the restriction is not met, you cannot require the transfer agent to do something that what it thinks, reasonably thinks, might be in violation of federal law. And that is where the reasonableness of DeWitt, of Kendler, and a variety of citations that we provided the court exists and why it exists here. And so, when the district court found, as she did here, that Chase Mellon properly was concerned about potential statutory liability for failing to honor the restrictive legislation, it was reasonable for Chase Mellon to have not registered the transfer. Does the court have any specific questions? Well, out of the Sansini letter that was written originally, did that fail to register just because of the certificate number aberration, or was there some other problem with it? Your Honor, the Wilson-Sansini certificate listing, it wouldn't have lifted the restrictions. Those materials were provided as part of the materials that went from Wilson-Sansini to Chase Mellon. So, it wouldn't have removed that certificate, A-26, from the spreadsheet that was later used as the basis for the exchange. And that's just because the certificate number was incorrect. The only problem with that was that effort to remove the restrictions. Well, first of all, it wasn't an effort by the shareholder to remove the restriction. It was something that was sent by Wilson-Sansini, number one. Number two, the certificate date was different, and the shares by the certificate number were different. Essentially, what the plaintiffs-slash-appellants argue here is that share certificate numbers are meaningless. Just go by the name. If the opinion letter provides the level of evidence to the plaintiffs- And the statute doesn't give you any guidance on that point. Is that right? Correct, Your Honor. Instead, it's whether or not the duty is triggered. And the cases say that if you have a reasonable belief that the shares are – cannot be transferred, that the transfer agent does not have liability. And, in fact, given the fact that to this day, there is no opinion letter that says the restrictions could have been lifted from Certificate 826, it's just not out there. Unless the Court has specific questions, we'd simply submit that the district court's decision should be affirmed. All right. Thank you. Mr. Fleming. Your Honor, I'll speak quickly. I've got a lot to say, unfortunately. First of all, the statute does not require an opinion letter. What you have here is a situation where there is a restriction on the back that talks about an opinion letter. It's an opinion letter that's acceptable to the issuer. Well, when Wilson-Cincinni itself says, we gave them an opinion letter that applies to these shares, that should be sufficient to be acceptable to the issuer. The fact that after the fact that Chase Mellon tries to come up with some issue about 820 versus 826, when that letter was never even considered by them in their process, is really almost a red herring. What you have here is the letter was sitting there. Well, it's a red herring that they didn't look at it because they either had a duty to transfer or they didn't. And if they screwed up, in every possible respect along the way, you may have a claim for negligence against them, whether process was wrong or the left hand didn't know what the right hand was doing or what their feet were doing. But they either did or didn't have a duty to transfer. And, Your Honor, I submit that under the statute, they had a duty to transfer. Because you take this group of entities, and under the statute, the issuer is the same as the transfer agent. The issuer had been told by its own attorney that these particular shares could be transferred, that the restrictions no longer apply. And if I could, Your Honor, I'd just refer the Court to two pieces of evidence that I think are significant the Court could look at. Chase Mellon itself was acknowledging that these three sets of shares could be transferred. We're talking about a follow-up letter from Wilson-Cincinni, which you'll find at ER 903 to 904. This limited that original letter to three separate sets of shares, followed up by a Rosa Batista memo, a Chase Mellon memo, which is at 905 to 906, where she says, effective with this memo, the only shareholders that can sell Class A shares are those listed. Upon sale of any Class A shares up to the total shares, shares are converted to Class B. Point being, they're focusing on the shares. They're focusing on the names. And that's consistent with the process that was going on internally. And that, Your Honor, is consistent with the statute. Because the statute's talking about an objective perspective. And it's a very important analysis to keep in mind. And it's why this A20 versus A26 takes you away from what the statute itself focuses on, which is what is in fact rightful and is that restriction still in place. And then you take a look at the back of the certificate itself, which talks about whether or not an opinion has been received that's acceptable to the issuer. We didn't submit an opinion, but one was in their possession already. Last point, Your Honor, if I may. With respect to the Kendler case, I am familiar with that case. Essentially, there, there was no existing opinion letter. But there, you didn't have an opinion letter in the possession of the transfer agent. It was a very different factual scenario. There, there was no opinion letter whatsoever. And the court in dicta basically said, well, then it's the obligation of the person submitting. The statute doesn't say that. And I submit that that's really an open issue at this point. Who does have that obligation? When you're looking at a collection of large companies with information available to them that a simple shareholder doesn't have. Okay. Thank you, Your Honor. Thank you, Mr. Fleming. Thank you, Ms. Walker. The matter just argued will be submitted and the court will stand in recess. Quiet, quiet. Thank you. Thank you.
judges: Browning, Cudahy, Rymer